480 So.2d 909 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellee,
v.
William Lane STEPHENSON, et al., Defendants-Appellants.
No. 17400-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
Rehearing Denied January 10, 1986.
*910 Hargrove, Guyton, Ramey & Barlow by Ray A. Barlow and A.L. Wedgeworth, III, Shreveport, for William and Freda Stephenson, defendants-appellants.
Robert L. Oliver, Baton Rouge, for Dept. of Transp. and Development, plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
The landowner appeals, seeking to increase a judgment awarding him $31,275 over the $57,500 deposited for the expropriation of his property for highway purposes (1-49 in Shreveport) under the quick taking statute. LRS 48:441-460.
The landowner contends that the trial court erred in denying recovery of lost rentals and in reducing the value assigned to the improvements because of the possibility of flooding. In the event judgment is increased, the landowner also seeks to increase attorney fees. We amend to allow recovery for lost rentals, to increase attorney fees, and as amended, affirm the judgment.

FACTS
The property is a rectangular tract of land, 100' × 142' on Wilkinson Street near Southern Avenue in Shreveport. Severance damage is not an issue because all of the property was taken. Improvements *911 consist of a one-story masonry building with an area of 8,700 sq. ft. Expert witnesses agreed that the highest and best use of the property is light industrial or commercial use.
The trial court, agreeing with the landowner's expert, valued the land at $22,700 and the improvements at $69,400, but reduced this value by $13,900 because the land had a "possibility of flooding." The land flooded twice in 1974 as a result of drainage system problems and again in 1978 after a record rainfall in which Shreveport received over four inches of rain in 100 minutes. Because of this history, the trial court reduced the value of improvements, finding that although the property was not flood prone, there was a possibility of flooding. Legal interest was awarded from August 3, 1982. LRS 48:455. Attorney fees of $5,175 and costs, including expert witness fees, were assessed against the State.

THE POSSIBILITY OF FLOODING AND ITS RELATION TO MARKET VALUE
The landowner contends that the trial court's finding that the possibility of flooding of the property had a detrimental effect on the value of the improvement, was not reasonably supported by the evidence.
The landowner's expert valued the improvements at $69,400 while the State's two experts valued them at $33,300 and $33,600. The State's experts took into account the fact that the property was subject to flooding. The landowner argues that the State's expert opinion has no effect because the prior flooding resulted from clogged drainage, since temporarily corrected, and from the record breaking rainfall. The landowner also shows that his property is not within the 500-year flood boundary established by the Federal Emergency Management Agency in 1981. The landowner argues that the trial court should have disregarded the appraisals of the State's experts because the possibility of flooding was not shown to be a "reasonable" possibility that is legally required to affect value.
The landowner testified that on three occasions his tenants had moved from the property because of flooding. The landowner also testified that he always "alerted" his prospective tenants to the possibility of flooding.
We find that the trial court did not err in considering the testimony of the State's experts. State, Dept. of Transp. v. Van Willett, 386 So.2d 1023 (La.App. 3d Cir.1980), writ denied; State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir.1970).
When experts disagree as to the value of property, the trial court has wide discretion to determine what weight will be given to each expert's testimony. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). The trial court found that the value of the improvements, $69,400, should be reduced by $13,900 to compensate for the [reasonable] possibility of flooding. The net value of $55,500 is within the values given by the experts and we find no clear error.
The landowner also argues that the value of the improvements should not have been reduced where it was shown that the City of Shreveport chose not to permanently correct problems in the drainage system because the 1-49 construction would soon begin. The landowner argues that the flooding was indirectly caused by the threatened expropriation.
LRS 48:453(A) states:
The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
The purpose of § 453(A) is to avoid the proposed expropriation having any effect, whether to increase or reduce, the compensation that is due a landowner. See State Dept. of Highways v. Bitterwolf, 415 So.2d 196 (La.1982). Any other interpretation *912 would be tenuous. The State in this instance should not be responsible for the City's action or inaction, if any, that might cause harm to a landowner.

LOST RENTALS
The landowner claims that because of the announced impending expropriation, he should be compensated for rentals which he lost between the announcement of the project and the actual expropriation. The trial judge ruled that landowner did not sufficiently prove the value of the lost rentals. We must respectfully disagree.
LSA-Const. Art. 1, § 4 requires that the owner "be compensated to the full extent of his losses." Compensation to the full extent includes rentals lost by a landowner as a direct result of the delay between the announcement and actual expropriation. State, Dept. of Transp. & Devel. v. Beasley, 439 So.2d 461 (La.App. 2d Cir.1983), writ denied.
The landowner's expert opined that the threat of expropriation created by published reports of the 1-49 project affected the market for renting the property as early as December 1973. This expert computed the net rental loss as follows:

Year ending 7/31 1974 $480.00
 1975 1,980.00
 1976 240.00
 1977 3,305.60
 1978 3,217.60
 1979 7,684.00
 1980 6,369.60
 1981 6,255.20
 1982 8,620.00
 TOTAL $38,152.00

According to the landowner, however, his difficulty in renting the building between 1974 and 1978 was caused by the three floods occurring during that period and that it was not until August 1978 that the threat of expropriation made it more difficult to rent the building.
The building was rented some of the time between 1974 and 1982. The trial court should not have totally disregarded the testimony of the landowner and his expert and should have awarded some damages for this loss from August 1978 through August 3, 1982, the date title vested in the State. Using the computations of the landowner's expert for that period, we deem $29,000 will fully compensate the landowner. We shall amend the judgment accordingly. CCP Art. 2164.

ATTORNEY FEES
LRS 48:453(E) provides:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court.
Following LRS 48:453(E), we find that 25 percent of the total value in excess of the $57,500, which was deposited into the registry of the court, is a reasonable fee. Thus, the judgment should be amended to provide a total of $12,425 in attorney fees.

EXPERT APPRAISER FEES
We cannot consider the State's contention, made in its brief, that the trial court erred in granting $1,750 to the landowner for pre-trial conference fees of the appraisers. A judgment cannot be modified in favor of an appellee who does not answer the appeal or perfect its own appeal. CCP Art. 2133.

DECREE
The judgment is amended to award the landowner $29,000 as compensation for lost rentals with legal interest from August 3, 1982, and to increase the award of attorney fees from $5,175 to $12,425. As amended, and at the cost of appellee, the judgment is AFFIRMED.
NORRIS, J., concurs with written reasons.
SEXTON, J., concurs for reasons assigned by NORRIS, J.
*913 NORRIS, Judge, concurring.
I concur in the overall result awarding the landowner an additional compensation of $29,000 plus interest, and additional attorney's fees.
After the trial court accepted the testimony of the landowner's expert as to the value of the land and improvements, and specifically found that the property was not flood prone, I am reluctant to sanction its action in reducing that accepted value by an arbitrary percentage of 20 percent because of a "possibility of flooding." Under the circumstances of this record, a goodly portion of the property in the city of Shreveport would "possibly" flood. A 20 percent reduction based on a "possibility" amounts to nothing more than mere speculation.
However, the record reveals the landowner was a poor manager of this property after he knew it would be taken, made no real effort to get the city to correct the drainage problem and was "honest" to his own detriment in telling prospective tenants that the property had in fact flooded. These factors certainly reduced the amount he claims for lost rentals.